## VOSE *v.* BRONSON.

Where a mortgage for a certain sum, as $4,000,000, was given to trustees to secure railroad bonds to be issued to a like amount, and many of the bonds having been issued at a large discount, were, on a claim made against the company, judicially decreed entitled to no more than what had been actually given for them—so that a margin remained of the mortgage security,—a party, who had sold to the company materials used in making the *road*, and who took in payment some of the bonds at 80 per cent., with an agreement that if the company should at any time sell other bonds at a less rate, he should have as many additional bonds as would pay him for materials in full,—estimating the bonds already given and those to be given at the lowest rate at which any had been sold,—was *held* not entitled—the company (which was now insolvent) having sold bonds at 40 per cent.,—to have his outstanding equity adjusted on a foreclosure of the mortgage, and his demand attached to the mortgage; bonds to the whole extent of $4,000,000 having been actually issued.

APPEAL from the Circuit Court for Wisconsin.

In December, 1856, the La Crosse and Milwaukee Railroad Company, to secure ten millions of dollars in bonds, to be issued by them, executed a mortgage to Bronson, Soutter, and Knapp, as trustees for the bondholders. This mortgage was amended in 1858, so as to limit the issue to four millions. Bonds to that amount were issued, and became a lien on the road. In consequence of the failure of the company to provide for the payment of interest, the trustees, in 1859, instituted proceedings in the Federal court of Wisconsin, to foreclose the mortgage; which proceedings, in 1862, passed to a decree. The road in 1863, was sold. After the decree, but before the sale, one Vose (the appellant), who had not been made a party defendant to the suit of foreclosure, filed a bill against the trustees just named, asking to come in and share in the proceeds of the sale of the mortgaged property in their hands.

The bill set forth that before the execution of the mortgage, but in immediate contemplation of it, the La Crosse Company had agreed to buy a large quantity of railroad iron of a firm to whose rights the complainant had succeeded,

giving to them bonds to the extent of about $714,000 in payment, at the rate of eighty cents on the dollar; that it was well understood between the parties that the firm, which was one dealing extensively in railroad iron, took the bonds, not to hold as investments, but for commercial and immediate use; that to guard against loss to the firm by a depreciation in the markets of the bonds thus to be assigned to it, by the company's selling any of those which they yet retained at a less rate than the 80 per cent., it was agreed that if the company should sell any of their bonds to any one during a certain term named, at a less rate than this one, *then*, that the company should deliver to the firm so many additional bonds as would pay the firm for the iron in full, estimating the bonds already given and those to be given at the lowest rate at which any bonds had been sold. The bill further set forth that the iron (10,474 tons) was delivered to the company, and by them used in making their road, and now formed a material ingredient in the value of the property sold.

Admitting that the company *had issued, sold and delivered the whole four million dollars of bonds* (so that on the face of the bill it appeared that the company had the control of no more *bonds*), the bill set forth that it had sold a large amount of them as low as forty cents on the dollar; that the firm, needing to "realize" on the bonds assigned to them, had been compelled to sell at that same rate, and that the effect of the company's thus selling at 40 per cent. was, that the firm had been paid but half the stipulated price for their iron. It set forth, moreover, that in fixing the claims which the respective bondholders had upon the proceeds of the sale of the mortgaged premises, a portion of the bonds were, by the final decree of foreclosure, cut down from the value apparent on their face to 40 per cent., on account of their having been sold at a discount; and that

| | |
|---|---:|
| The decree of foreclosure having been entered for | $2,794,600 |
| There remained as balance an unappropriated lien of | 1,205,400 |
| Part of the original mortgage for | $4,000,000 |

That he, Vose, had not been made by the trustees, in their

suit for foreclosure, a party defendant as he ought to have been, so that he might have been enabled to set up and in- sist upon his claim under their bill of complaint; that *his* claim was accordingly not foreclosed or impeached, and that the decree ought to be so modified as to let it in. The insolvency of the La Crosse Company was alleged, and notice of the contract and of its breach to all the parties in the principal cause. The bill accordingly prayed that as the firm was to be paid only in bonds, and did not receive enough to pay them, that the requisite amount of bonds, that is to say, another $714,000, might be executed and delivered to them, or at any rate that they might stand in the same posi- tion as if such requisite number had been executed and de- livered to them; and that the decree might be opened and the complainant let in so as that his equities might be pro- vided for out of the unappropriated lien in the mortgage, which it was stated was sufficient to provide for them.

The bill, on demurrer to it, was dismissed by the Circuit Court. Appeal here.

*Mr. E. G. Ryan, for the appellant:*

The appellant having delivered his property and received his bonds, finds their value depreciated one-half, by the rail- road company's action—fraudulent without doubt—in selling *all* their bonds of the same issue, at half the price at which he took his, without reserving any whatever to fulfil their contract to him arising in case of a sale of any at such a price. The effect in law (and in fact, also, as the thing proved), was to pay him but half the stipulated price for his iron. The bill seeks payment of the unpaid half.

Will it be urged that our bill is in prejudice of subsequent encumbrancers? It cannot be rightly so urged. Under the mortgages, each bondholder was entitled to his *pro rata* share of four millions of dollars. But, beyond that, the mortgage gave him no right. And it is unimportant to any bond- holder how the rights of other bondholders accrue, provided that the whole principal sum is not swelled beyond four mil- lions of dollars. The mortgage has that capacity. Four

millions of bonds were issued.  But the decree of the court finds less than three millions due upon the whole issue.  And there remains an undisposed principal of upwards of a million of dollars, which the mortgage can cover without wrong to any bondholder under it.

Had the railroad company issued in fact, but $2,794,600 of bonds (the principal sum found due by the decree), the complainant would clearly have had a right to satisfaction until the mortgage was charged with the full principal sum of four millions of dollars.  Yet practically, and as judicially decided, that is all that they have issued.

The case is strong in natural equity.  In 1857, the complainant furnished all the iron, constituting the track of this railroad, at a cash price of $605,000.  In 1863, when, as is matter of common knowledge, the value of such iron had nearly doubled, the road was sold as the fact is for about $2,800,000.  It will be hard indeed, if the complainant is to be left remediless for the great loss which he has sustained, and of which the defendants have the whole profit.  Yet if the decree be affirmed he will be so left.

*Messrs. Cary and Carlisle, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

The question presented by this record is of easy solution. If Vose had brought suit against the La Crosse and Milwaukee Railroad Company for a breach of their contract, the interpretation of it would have been a proper subject of inquiry, but the decision of this case does not depend on the disposition of that question.  The appellant places his claim for relief, on his right to have an outstanding equity with the La Crosse Company adjusted in the foreclosure suit, and his demand attached to the foot of the mortgage.  To do this, there must be a power somewhere to enlarge the mortgage, and where is it lodged ?  Certainly not with the trustees, for their duty is to see that the security held by them for their *cestui que trusts* is enforced according to the terms of the deed.  They could neither enlarge the mortgage, nor

consent to its enlargement. The court could not do it, nor the La Crosse Company, as it had covenanted with the trustees in behalf of the bondholders, that it would only issue four millions of dollars in bonds. The rights of the bondholders were fixed by the terms of the mortgage. The value of the bonds as an investment, depended in a great measure on the number to be issued, and doubtless, each purchaser before he bought, had information of the character of the security on which he relied. The property might be very well a safe security for four millions of dollars, and very unsafe for any additional amount.

The doctrine contended for would utterly destroy the marketable value of all corporate securities. No prudent man would ever buy a bond in the market, if the provisions made for its ultimate redemption could be altered without his consent.

But it is said, as the court rendered a decree for less than the face of the bonds, equity will step in and allow the appellant to apply the vacuum of principal secured by the mortgage, to liquidate his claim. The answer to this is, that it does not concern the appellant whether the court rightfully or otherwise reduced a portion of the bonds. The bondholders, whose bonds were thus reduced, are the only parties in interest, who could have any just cause of complaint against the action of the court, and if they did not feel aggrieved, no other person has any right to complain. The security of the mortgage extended to four millions of bonds only, and whatever amount the court should ascertain was due on those four millions, was the amount secured, and no more.

If Vose had been made a party defendant to the foreclosure suit, the decree would have been the same. But he was not a necessary party to that suit. The trustees, as the representatives of all the bondholders, acted for him, as well as the others. It would be impracticable to make the bondholders parties in a suit to foreclose a railroad mortgage, and there is no rule in equity which requires it to be done.

DECREE AFFIRMED.